UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KIM L. KENT

        Plaintiff,             :

v.                                      Case No. 2:19-cv-4306
                                         Judge Sarah D. Morrison
                                         Magistrate Judge Kimberly A. Jolson

OHIO DEPARTMENT OF
YOUTH SERVICES.,             :

        Defendant.

## OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment filed by Defendant Ohio Department of Youth Services. (ECF No. 32). Plaintiff Kim L. Kent filed a Memorandum Contra to the Motion (ECF No. 36), and the Defendant filed a Reply (ECF No. 37). Easton's Motion is ripe for decision.

**I.    STATEMENT OF FACTS**

Ms. Kent, a black woman, has a bachelor's degree and master's degree. (ECF No. 23, Kent Depo, PageID 120–121, 240). She has worked for Defendant since 2000. (ECF No. 23, Kent Depo, PageID 133–34). She first worked as regional administrator in Cincinnati responsible for parole officers and their supervisors as they handled case management for juvenile offenders, before moving to Columbus to be a parole services manager. (*Id.*, PageID 142–44). In 2006, Kent became the Director of the Department's Training Academy, serving in that role until 2010 when she was asked to move to another position. (*Id.*, PageID 145–150). Although

1

she was surprised to be asked to move, she became a Re-Entry Administrator. (*Id.*). As a Re-Entry Administrator, Ms. Kent was responsible for community reintegration programs and related work for juvenile offenders. (*Id.*, PageID 150–52).

In 2015, Defendant revoked Kent's unclassified appointment as Re-Entry Administrator due to something that occurred at a conference in New York. (*Id.*, PageID 153–58). In response, Kent exercised her "fallback rights"[1] to return to the classified position of Human Services Program Administrator 3, with a working title of Policy Administrator. (*Id.*, PageID 161–64). Kent is currently serving in this role and is responsible for policy review and development. (*Id.*, PageID 164).

As Policy Administrator, Kent reports to Yolanda Frierson. (*Id.*, PageID 140–41). However, because her job responsibilities include development of Department policy, Ms. Kent also works directly with Assistant Director Julie Walburn. (*Id.*, PageID 141, 274).

In 2018, Kent applied for the position of Training Manger at Defendant's Training Academy. (*Id.*, PageID 196–97). However, Defendant hired two white men (Darrin Kreis and William Stout) into the Training Manager role. (*Id.*, PageID 107).

**Defendant's Hiring Processes**

Defendant is the state agency charged with running the juvenile corrections system for the State of Ohio. It houses and educates juvenile offenders, ages ten to

---

[1]Fallback rights are the rights of an unclassified civil service employee losing her unclassified position to return to the last classified position that she held, if any, with the Defendant.

twenty-one, who have been adjudicated and committed by a juvenile court. As part of its responsibilities, Defendant operates a Training Academy for new and current staff. The Training Academy trains on a variety of topics, including courses on the supervision of youth, youth rights, security procedures, trauma informed care, first aid and CPR, suicide prevention and assessment, and the appropriate use of force. (ECF No. 32–1, Stout Decl., ¶ 4).

Defendant's workforce is comprised of both classified and unclassified civil servants and it has different processes for hiring for each. Ohio Rev. Code § 124.11; ECF No. 24, Moore Depo, PageID 477. Unclassified employees are appointed and serve at the discretion of the Director, who is the appointing authority for the Department. *See, e.g., McClain v. Northwest Community Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 330 (6th Cir. 2006); (ECF No. 24, Moore Depo, PageID 467–68; Ohio Rev. Code § 5139.01(B)). Vacancies for unclassified positions are not required to be posted and there are no requirements that candidates be interviewed. (ECF No. 24, Moore Depo, PageID 477; ECF No. 23, Kent Depo, PageID 242–45, 260). Classified positions must be posted, and interviews must be conducted. (ECF No. 24, Moore Depo, PageID 477).

**The Training Program Manager Positions**

During the administration of former Ohio Governor John Kasich, Defendant began operating under a "Shared Services" plan to share human resources and other administrative services with the Ohio Department of Rehabilitation and Correction ("ODRC"). (ECF No. 23, Kent Depo, PageID 185–86; ECF No. 24,

PageID 462). Pursuant to the Shared Services plan, Defendant and ODRC began operating one Office of Human Resources that served both entities; Edward Banks oversaw those services for both agencies. (ECF No. 29, Banks Depo, PageID 684–85, 694; ECF No. 23, Kent Depo, PageID 185–86).

The Shared Services plan led to changes in Defendant's Training Academy. First, the then-Director of the Training Academy (Ursel McElroy) accepted a new position. (ECF No. 23, Kent Depo, PageID 185; ECF No. 28, Walburn Depo, PageID 648–49). With Ms. McElroy's departure, Defendant restructured the Academy with two lower-level positions reporting to an ODRC staff person. (ECF No. 28, Walburn Depo, PageID 648–49). Ernie Moore, who was the Superintendent/Director of ODRC's Training Academy, became the Superintendent of Defendant's Training Academy. (ECF No. 24, Moore Depo, PageID 462–63, 494). When Moore took on this dual role, Defendant created two "Training Program Manager" unclassified service positions in pay range 14 to report to Mr. Moore. (*Id.*, PageID 473–75; ECF No. 28, Walburn Depo, PageID 648–49; ECF No. 23–1, Kent Depo, PageID 370–71).

The Training Program Manager positions were posted[2] in June 2018. (ECF No. 23–1, Kent Depo, PageID 370–71). In response, the Department received many applications. (ECF No. 24, Moore Depo, PageID 487). Defendant's Office of Human Resources performed an initial screen to determine which current employee candidates met the minimum qualifications for the positions. (*Id.*). Ms. Kent and

---

[2] Defendant was not required to post the positions because they were unclassified but, according to Mr. Moore, they wanted to "test the waters to see who was interested in the job." (ECF No. 24, Moore Depo, PageID 486).

4

Darrin Kreis were both in the screening results. Mr. Moore reviewed the screening results and spoke with several others in the agency about the candidates, including Ms. McElroy[3] and former Assistant Director Damita Peery.[4] (*Id.*, PageID 484–87).

Moore then met with Defendant's senior leadership, including then-Director Harvey Reed (the appointing authority), Assistant Director Walburn, Mr. Banks, and Robin Gee (personnel administrator). (*Id.*, PageID 502; ECF No. 29, Banks Depo, PageID 685–87). At that meeting, Moore read aloud the names of the candidates who were in the screening results to get Director Reed's thoughts on the candidates. (ECF No. 24, Moore Depo, PageID 502–03; ECF No. 29, Banks Depo, PageID 687–89). Mr. Moore also shared the information that he had learned from Ms. McElroy and Ms. Peery about the candidates. (ECF 32–3, Moore Decl., PageID 1088, ¶ 11). When Moore read Darren Kreis's name, all agreed that he was a good candidate for the Training Program Manager position. (ECF No. 24, Moore Depo, PageID 505–07). Other than Kreis, there were no candidates from the screening results that the group felt would be right for the open positions. (*Id.*). Specifically, as to Ms. Kent, "there was a mutual agreement that she wasn't suitable for the position." (ECF No. 28, Walburn Depo, PageID 656).

---

[3]McElroy "highly recommended" Kreis and another Training Academy employee who had not applied, William Stout. (ECF No. 24, Moore Depo, PageID 508–09; ECF No. 29, PageID 690–91). At the same time, McElroy expressed concerns about Kent's performance when she had served as Training Academy Director. (ECF No. 32–2, McElroy Decl., PageID 1084–86, ¶ 9).

[4]Peery recommended Kreis and thought he would do well based on her working knowledge of him and his ability. (ECF No. 24, Moore Depo, PageID 488–89). Peery did not recommend Kent for the Training Program Manager positions. (*Id.*, PageID 498).

After concluding that Director Reed would approve Kreis as a candidate but not anyone else in the screening results, the Director, Moore, Walburn, Banks, and Gee discussed other employees who did not apply but they believed might be good candidates. (ECF No. 24, Moore Depo, PageID 507–08). Moore shared that Ms. McElroy had "highly recommended" Kreis and another Training Academy employee, William Stout. (*Id.*, PageID 508–09; ECF No. 29, PageID 690–91). The group agreed that Moore would contact Mr. Stout about the second position. (ECF No. 24, Moore Depo, PageID 508–11; ECF No. 29, Banks Depo, PageID 691).

Moore subsequently asked Mr. Stout whether he would be interested in a Training Program Manager position. (ECF No. 24, Moore Depo, PageID 511–12). After some discussion, Mr. Stout indicated that he was. (ECF No. 32–2, Stout Decl., PageID 1084, ¶ 10). Mr. Stout then submitted his resumé and completed an official application for the position. (ECF No. 24, Moore Depo, PageID 511–12; ECF No. 25–1, Stout Depo, PageID 592–98).

On August 2, 2018, Moore notified Ms. Kent she had not been selected for either Training Program Manager position. (ECF No. 23, Kent Depo, PageID 210–11; ECF No. 23–1, Kent Depo, PageID 395). Specifically, Mr. Moore emailed her stating:

> Kim,
> I wanted to let you know that I have selected and submitted two names for the vacant positions at the academy.
> Your experience and credentials were very impressive, but at the end of the day I chose to go with two candidates that currently work at the academy.

6

> This will help boost the morale of the academy staff as well as allow us to bring in new staff at the PR12 level to bring new ideas and experiences.
> I thought this was the best move for us and the agency.
> Thanks for your interest in coming back into training,
> Ernie

(*Id.*). The next week, Defendant announced that Kreis and Stout had been placed into Training Program Manager roles. (*Id.*, PageID 396).

**Kreis's and Stout's Qualifications**

At the time of his selection for one of the positions at issue, Mr. Kreis had been employed by the Department since 2007 and had been administering the Training Academy's pre-service training program for new hires for six years. (ECF No. 26–1, Kreis Depo, PageID 616–22). Among other things, he had worked with Training Academy Director McElroy to train every new DYS employee and had updated the pre-service curriculum. (ECF No. 32–2, McElroy Decl., PageID 1084, at ¶ 6). Prior to joining the Training Academy, Mr. Kreis had been a Juvenile Corrections Officer. (ECF No. 26–1, Kreis Depo, PageID 618). Mr. Kreis holds associate's degrees in Police Science and in Corrections. (*Id.*, PageID 616–22).

Mr. Stout has worked for Defendant since 1996. (ECF No. 25, Stout Depo, PageID 583–84). He has a bachelor's degree in Criminal Justice. (ECF No. 25–1, Stout Depo, PageID 595). When he applied for the Training Program Manager position, Mr. Stout was a Program Administrator 2 at the Training Academy and was responsible for training Department employees on the Department's Use of Force Program and other topics. (*Id.*, PageID 594). He had previously served as a

7

training officer at Defendant's Circleville Juvenile Correctional Facility. (*Id.*, PageID 595).

## II. PROCEDURAL BACKGROUND

Ms. Kent filed a discrimination charge with the Equal Employment Opportunity Commission and received a Right to Sue letter dated July 9, 2019. (ECF No. 23, PageID 226, 235–36). She then filed this action on September 27, 2019, asserting claims for race discrimination and gender discrimination against Defendant. (ECF No. 1, Compl.).

## III. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as

to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

### IV.	ANALYSIS

Kent asserts Defendant violated Title VII and Ohio Rev. Code Chapter 4112 by discriminating against her based upon her race and gender.

Title VII makes it illegal "for an employer—to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C.S. § 2000e–2(a).  Similarly, R.C. 4112.02 states:

> [i]t shall be an unlawful discriminatory practice: (A) [f]or any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, * * * to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Because the Sixth Circuit has recognized that the standards for Title VII and Ohio Rev. Code § 4112 claims are the same, the Court will address these claims together. *Laderach v. U-Haul*, 207 F.3d 825, 828 (6th Cir. 2000).

The Court must first determine whether Ms. Kent's race and gender discrimination claims should be analyzed under a mixed-motive or single-motive analysis. A mixed-motive analysis applies to cases "where an adverse employment

9

decision was the product of a mixture of legitimate and illegitimate motives." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 571 (6th Cir. 2003) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 (1989)). A plaintiff triggers mixed-motive analysis by giving notice of bringing such claims. *Spees v. James Marine, Inc.*, 617 F.3d 380, 390 (6th Cir. 2010); *see also Bartlett v. Gates*, 421 F.Appx. 485, 488 n. 1 (6th Cir. 2010) (mixed-motive standard "only applies when plaintiffs provide notice of mixed motive claims"). This treatment can be triggered expressly by invoking the mixed-motive analysis or impliedly through use of the motivating factor test in the complaint and responsive pleadings. *Spees*, at 390 (plaintiff gave adequate notice of mixed-motive claim by alleging pregnancy was a motivating factor and specifying she was bringing mixed-motive claims in a footnote in her motion for summary judgment); *cf. Hashem-Younes v. Danou Enters. Inc.*, 311 F.Appx. 777, 779 (6th Cir. 2009) (affirming district court's application of the *McDonnell Douglas* framework where the plaintiff failed to raise a mixed-motive claim in her complaint or in her response to the defendants' summary judgment motion, and the record was "utterly silent as to mixed motives").

Here, because Ms. Kent has argued that racial and gender discrimination were the sole motivating factors behind Defendant's failure to promote her and she did not present any direct evidence of discrimination, the Court will utilize the *McDonnell Douglas* burden-shifting framework when considering her claims. (*See*, ECF No. 1, Compl., PageID 3) ("The only reason that Plaintiff was not selected was because she was black or female."); ECF No. 36, Memo Contra, PageID 1104 (acknowledging that

10

there is no direct evidence of discrimination).

To succeed on her claims of discrimination, Ms. Kent has the burden of establishing a *prima facie* case, by a preponderance of the evidence, that she: (1) was a member of a protected class; (2) applied for and did not receive a position; (3) was qualified for the position; and (4) was rejected in favor of a similarly situated applicant outside her protected class or was otherwise treated differently than such an applicant. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008); *Jenkins v. Foot Locker Inc.*, 598 F.App'x 346, 349 (6th Cir. 2015). If she proves her *prima facie* case, the burden shifts to Defendant to offer evidence of a legitimate, non-discriminatory reason for the hiring decision. *Id*. If Defendant meets its burden, the burden then shifts back to Ms. Kent to demonstrate that the reason articulated was not the true reason, but merely a pretext for discrimination. *Id*. The ultimate burden of persuasion remains throughout this analysis on the plaintiff. *See Texas Dep't of Comty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981).

### A. Plaintiff's *Prima Facie* case

Defendant concedes that Ms. Kent meets the first three elements of her *prima facie* case but argues that she cannot establish that she was rejected in favor of similarly situated applicants outside her protected class, or that she was otherwise treated differently than such applicants. (ECF No. 32, PageID 1073). To satisfy the fourth element of this test, Ms. Kent must prove that she and the two persons hired were "similarly situated in all respects." *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004).

11

In response, Ms. Kent argues that Mr. Moore was the person who recommended the candidates to Director Reed and Mr. Moore "was aware of" the candidate's race and gender, there was no discussion of the qualifications of the candidates at the meeting, and there is no information from Director Reed regarding the basis for his decision. (ECF No. 36, Memo Contra, PageID 1102–04). As to her *prima facie* case, she claims that she has met her burden because she, Kreis, and Stout all met the minimum qualifications for the open positions. (*Id.*, PageID 1106).

The evidence submitted by Ms. Kent confirms that she and the two selected candidates all met the minimum qualifications for the Training Program Manager positions. That evidence alone, however, is insufficient to demonstrate that they were "similarly situated" in all respects. In fact, although all met the minimum requirements for the positions, Defendant has produced undisputed evidence that the candidates' backgrounds, work experiences, and references distinguished the qualifications of Kreis and Stout from Ms. Kent. First, both Kreis and Stout were working at the Training Academy when they applied for Manager positions. Not only was Ms. Kent not working at the Training Academy when the hiring decision was made, she had previously served as the Director of the Training Academy but had been moved away from the Academy. (ECF No. 23, Kent Depo, PageID 149–50). Second, both Kreis and Stout had positive recommendations from the outgoing Director of the Training Academy (ECF No. 24, Moore Depo, PageID 509; ECF No. 32–2, McElroy Decl., PageID 1084–86, ¶¶ 5, 11, 14); not only was Kent

not recommended, the outgoing Director expressed concerns about Kent's performance and prior time serving as Training Academy Director. (ECF No. 32–2, McElroy Decl., PageID 1084–86, ¶ 9). Third, both Kreis and Stout had previous experience working within the Defendant's correctional facilities (experience that Ms. Kent did not have), which made them relatable to the staff that they trained and added credibility to the training. (ECF No. 32–2, McElroy Decl., PageID 1084–86, ¶ 8). Finally, there were questions about Ms. Kent's performance in her then-current position as Policy Administrator[5] (ECF No. 28, Walburn Depo, PageID 657–58), while Mr. Kreis had distinguished himself in his then-current position administering the Training Academy's pre-service training program for new hires. (ECF No. 32–2, McElroy Decl., PageID 1084–86, ¶¶ 6–8; ECF No. 32–3, Moore Decl., PageID 1087–88, ¶ 9). Mr. Stout similarly had "gained the respect and trust of [Defendant's] training managers and the training officers." (ECF No. 32–2, McElroy Decl., PageID 1084–86, ¶¶ 7–8).

Thus, though all three candidates were at least minimally qualified for the Management positions, it cannot be said that they were similarly situated. Ms. Kent has not established that she was rejected in favor of similarly situated applicants outside her protected class and Defendant is entitled to summary judgment.

---

[5] Assistant Director Walburn was "not satisfied" with Kent's work performance in her current policy administrator role. (ECF No. 28, Walburn Depo, PageID 657–58). Walburn also did not believe that Kent had the necessary skills, leadership, and ownership necessary for the Training Program Manager positions. (*Id.*, PageID 658).

13

### B. Defendant's legitimate, non-discriminatory reason

Even if Ms. Kent had been able to satisfy her *prima facie* burden, Defendant has produced legitimate non-discriminatory reasons for failing to hire her as one of the Training Academy Managers. Once the plaintiff meets her *prima facie* burden, the burden then shifts to the employer to produce a legitimate non-discriminatory reason for failing to hire the plaintiff for the position sought. *Provenzano v. LCI Holding, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011). This burden is one of production, not persuasion; it "can involve no credibility assessment." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993).

As Defendant told Ms. Kent at the time of its decision, it chose to select two candidates that were working at the Training Academy at the time of hiring. (ECF No. 23–1, PageID 395). The thought was that it would boost morale of the Training Academy staff to promote from within and would allow them to bring in new staff at Kreis's and Stout's previous lower-level positions. (*Id.*).

### C. Defendant's reason was not merely pretext for discrimination

Now Ms. Kent must show that a genuine issue of material fact exists as to whether Defendant's proffered reasons were pretext for discrimination. To avoid summary judgment, a plaintiff must produce sufficient evidence from which a jury could reasonably reject the defendant's explanation of why it did not promote her. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008)).

14

A court "may not reject an employer's explanation [of its action] unless there is sufficient basis in the evidence for doing so." *Gray v. Toshiba Am. Consumer Prods.*, 263 F.3d 595, 600 (6th Cir. 2001). The evidence must suggest that the employer acted for discriminatory reasons. *See Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001).

To show pretext, Ms. Kent may establish that Defendant's proffered reasons: (1) had no basis in fact, (2) did not actually motivate the employer's action, or (3) was insufficient to motivate the employer's action. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012). These three categories are a "convenient way of marshaling evidence and focusing it on the ultimate inquiry"—did Defendant promote Kreis and Stout for the stated reasons or not? *Id.* (internal quotation marks omitted).

Ms. Kent makes two arguments that relate to pretext. First, she argues that then-Director Reed was the decision maker, and he did not know that she had applied for the Program Manager position. (ECF No. 36, Memo Contra, PageID 1106–07). However, while it is true that Director Reed testified that he did not know she had applied, it does not logically follow that the reasons given for the promotion of Kreis and Stout were not legitimate. Director Reed testified that he "[m]ore than likely" approved promoting Kreis and Stout "as a procedural matter." (ECF No. 27, Reed Depo, PageID 629). Reed, as the appointing authority, relied on information provided to him by the Department's senior leadership in selecting Kreis and Stout to fill the positions. (*Id.*; ECF No. 24, Moore Depo, PageID 502–04;

15

ECF No. 32–3, Moore Decl., PageID 1088, ¶ 8; ECF No. 28, Walburn Depo, PageID 660–62). Mr. Moore made a hiring recommendation to Director Reed with input from Assistant Director Walburn and Mr. Banks. (ECF No. 32–3, Moore Decl., PageID 1088, ¶¶ 8–11; ECF No. 24, Moore Depo, PageID 507; ECF No. 28, Walburn Depo, PageID 662–63). Moore, Walburn and Banks testified regarding the work Mr. Moore did to review the candidates and the meeting they had with Director Reed to discuss the candidates. At that meeting, they discussed that the outgoing Director of Defendant's Training Academy "highly recommended" Kreis and Stout but not Kent. (ECF No. 24, Moore Depo, PageID 509). Moore favored Kreis because Kreis was already overseeing the Training Academy's pre-service training program. (ECF No. 32–3, Moore Decl., PageID 1088, ¶ 9). Assistant Director Walburn was not happy with Kent's performance. (ECF No. 28, Walburn Depo, PageID 657–58). And, after a discussion of the candidates, "there was a mutual agreement that [Kent] wasn't suitable for the position." (ECF No. 28, Walburn Depo, PageID 656).

Her second argument relating to pretext is that she had more education than the two selected candidates and that there was no evidence that morale was an issue at the Training Academy (and, if there was a morale issue, promoting her would have boosted morale as well). (ECF No. 36, Memo Contra, PageID 1107). As to this argument, evidence about the applicants' qualifications is certainly relevant to the question of pretext. *See, e.g., Burdine*, 450 U.S. at 259 (finding that "the qualifications of the applicants ... may be probative of whether the employer's reasons are pretexts for discrimination."). As the Sixth Circuit stated:

16

> In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment. On the other hand, in the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former.

*Stokes v. Detroit Pub. Schs.*, 807 F.App'x 493, 502 (6th Cir. 2020) (quoting *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626–27). A plaintiff's subjective belief that she is more qualified does not, of course, suffice to show pretext. *Stokes,* at 502.

Here, Ms. Kent does not provide any other probative evidence of discrimination. Nor are her qualifications so significantly better than Kreis and Stout that no reasonable employer would have chosen them over her. Other than her own subjective belief that she is more qualified, Ms. Kent offers only the fact that she has more education than Kreis and Stout. And while that is true, Kreis and Stout were not selected based on education but for several other reasons—including that they were currently working at the Training Academy and Ms. Kent was not. (ECF No. 23–1, PageID 395).

Ms. Kent has failed to present any evidence upon which a reasonable jury could determine that Defendant's stated reasons for failing to promote her were mere pretext for discrimination. Accordingly, Defendant's motion for summary judgment is **GRANTED**.

V. **CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment

(ECF No. 32) is **GRANTED**. The Clerk is **DIRECTED** to **TERMINATE** this case from the docket of the United States District Court for the Southern District of Ohio.

    **IT IS SO ORDERED.**

                                                   /s/ Sarah D. Morrison
                                                **SARAH D. MORRISON**
                                                **UNITED STATES DISTRICT JUDGE**